IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| ABDULKADIR SHARIF MOHAMED ABDI, | |
| Petitioner, | 4:25CV3251 |
| vs. | |
| DONALD J. TRUMP, in his official capacity as President of the United States; KRISTI NOEM, in her capacity as Secretary of the United States Department of Homeland Security; MARCO RUBIO, in his capacity as Secretary of State of the United States; TODD M. LYONS, in his official capacity as Acting Director of the United States Immigration and Customs Enforcement; PAMELA BONDI, in their official capacity as Attorney General of the United States; DAVID EASTERWOOD, in his official capacity as Acting Director, St. Paul Field Office, U.S. Immigration and Customs Enforcement; and JEROME KRAMER, in his official capacity as Sheriff of Lincoln County, Nebraska, Official of Lincoln County Detention Center; | **MEMORANDUM AND ORDER** |
| Respondents. | |

This matter is before the Court on Petitioner Abdulkadir Sharif Mohamed Abdi's Verified Petition for Writ of Habeas Corpus. (Filing No. 1). In December 2025, the Court granted Abdi's request for interim release pending a final ruling on his petition. (Filing No. 17). Following supplemental briefing on his remaining claims, the Court now grants his petition in part and reaffirms what it preliminarily found—Abdi is entitled to release from custody.

## BACKGROUND

The Court has previously detailed the facts surrounding Abdi's detention. (Filing No. 17 at 2-3). It therefore limits its discussion of the facts here to those relevant to his remaining claims.

Abdi is a Somali national and resident of Minneapolis, Minnesota. (Filing No. 1 at 7, 19). He was ordered removed to Somalia in 2001 and was detained in 2018 to effectuate his removal. (Filing No. 1-1). But Abdi won withholding of removal—and release from detention—in 2018. (Filing No. 1 at 20; Filing No. 1-6). He was released on an order of supervision dated February 5. 2019. (Filing No. 1-6). Abdi "complied with the terms and conditions" of that order, "including attending all of his scheduled" check-ins with U.S. Immigrations and Customs Enforcement (ICE). (Filing No. 1 at 20).

Things changed in December 2025. Abdi was detained again by ICE during Operation Metro Surge. (Filing No. 1 at 20). In a Notice of Revocation of Release signed by the Acting Deputy Field Office Director, ICE asserted that since Abdi was released, "removal from the U.S. is now significantly likely in the reasonably foreseeable future." (Filing No. 21-2 at 1). Given those "changed circumstances in [Abdi's] case," ICE determined that Abdi "w[ould] be brought back" into custody. (Filing No. 21-2 at 1). The Notice provided no further detail, however, as to why removal was now "significantly likely" or what those "changed circumstances" were.

An ICE officer "conducted an initial informal interview" with Abdi after his arrest at Fort Snelling. (Filing No. 21-2 at 3). The stated purpose of the interview was "to afford [Abdi] an opportunity to respond to the reasons for revocation of [his] order of supervision stated in the notification letter." (Filing No. 21-2 at 3). According to the ICE officer, in response to the "reasons for revocation," whatever they were, Abdi "state[d] he has [a] wife with cancer," outlined his expenses for rent and a car, and said he "dedicated" the last twenty years to his wife and immigration causes. (Filing No. 21-2 at 3). According to Abdi, instead of asking for a response to the reasons for revocation, the ICE Officer "asked [him] what he has been doing with [his] life since 2019[.]" (Filing No. 21-3 at 1). Abdi recalls the interview lasting "less than five minutes before [he] was taken away." (Filing No. 21-3 at 1). After being processed at Fort Snelling, Abdi spent the night at Sherburne County Jail and was then transferred to the Lincoln County Jail in North Platte, Nebraska. (Filing No. 1-8 at 2).

Abdi filed this petition for a writ habeas corpus around one week after his arrest. (Filing No. 1). After the Federal Respondents[1] informed the Court they would not respond to the petition, the Court granted Abdi's request for interim release. (Filing No. 17). The Court preliminarily found that Abdi had presented substantial Fifth Amendment claims and shown exceptional circumstances justifying special treatment in the interests of justice. (Filing No. 17 at 6); *Martin v. Solem*, 801 F.2d 324 (8th Cir. 1986). Abdi was released on December 24, 2025 under a new order of supervision. (Filing No. 18 at 3).

The Court also granted Abdi's request to file supplemental briefing addressing his remaining claims. (Filing No. 17 at 7). Abdi timely filed his supplemental brief (Filing No. 21), the Federal Respondents responded (Filing No. 22), and Abdi replied (Filing No. 26). The parties agreed to waive a hearing, *see* 28 U.S.C. § 2243, and this matter is ready for decision.

## STANDARD OF REVIEW

"Habeas is at its core a remedy for unlawful executive detention." *Munaf v. Green*, 553 U.S. 674, 693 (2008). Federal courts have jurisdiction to hear habeas corpus claims by noncitizens challenging the constitutionality of their detention. *See Demore v. Kim*, 538 U.S. 510, 516-17 (2003); 28 U.S.C. § 2241(a). Abdi bears the burden to show that he is in custody in violation of the Constitution or federal law. 28 U.S.C. § 2241(c)(3); *Walker v. Johnston*, 312 U.S. 275, 286 (1941).

## DISCUSSION

Abdi divides his remaining claims into two categories—one centering on his arrest and detention, and another centering on the Federal Respondents' "plan to remove [him] to a third country" without meaningful notice or an opportunity to be heard on a claim of fear of persecution there. (Filing No. 21). The Court will address both in turn.

---

[1] The Federal Respondents include all Respondents except for Lincoln County Sherriff Jerome Kramer. (Filing No. 13 at 1). Sherriff Kramer, through counsel, separately filed a response to the petition indicating that he takes no position on the issues raised in it or whether the writ should be granted. (Filing No. 19).

3

1. **Arrest and detention-related claims**

The Court has discussed these claims—though preliminarily—before. In its order granting Abdi's request for interim release, the Court found that ICE failed to follow its regulations when re-detaining him. (Filing No. 17 at 5). Before reaching the merits, however, the Court must address an antecedent issue. The Federal Respondents argue that Abdi's arrest and detention-related claims are moot. The Court disagrees.

The Constitution limits federal courts' jurisdiction to actual "Cases" or "Controversies." *Allan v. Minnesota Dep't of Hum. Servs.*, 127 F.4th 717, 720 (8th Cir. 2025) (quoting U.S. Const. art. III, § 2). If "the issues presented are no longer live or the parties lack a cognizable interest in the outcome, a case or controversy under Article III no longer exists because the litigation has become moot." *Id.* (quoting *Brazil v. Ark. Dep't of Hum. Servs.,* 892 F.3d 957, 959 (8th Cir. 2018)). For example, "a party loses a cognizable interest when changed circumstances already provide the requested relief and eliminate the need for court action." *Id.* And if a claim becomes moot, the Court "must dismiss for lack of jurisdiction." *Id.*

Here, Abdi's arrest and detention-related claims are not moot. In its previous order, the Court merely found that Abdi was "entitled to *interim release* pending adjudication of his habeas petition." (Filing No. 17 at 6) (emphasis added). That conclusion "resolve[d] Abdi's request for immediate release only" and left his "remaining claims . . . reserved for future adjudication." (Filing No. 17 at 6). Put differently, the Court did not issue a final ruling on Abdi's arrest and detention-related claims. They are therefore not moot. *See, e.g., Eby v. United States,* 133 Fed. Cl. 706, 708 (2017) ("A grant of interim relief will not render a claim moot if even some of the requested relief remains available.") (citation modified).

The Court now turns to the merits of those claims. As the Court outlined previously, the re-detention of a noncitizen on supervised release is governed by 8 C.F.R. § 241.13(i). *See Roble v. Bondi*, 803 F. Supp. 3d 766, 771 (D. Minn. 2025) ("Once ICE releases a noncitizen on an Order of Supervision, ICE's ability to re-detain that noncitizen is constrained by its own regulations."). ICE may re-detain a noncitizen released on an Order of Supervision "if, on account of changed circumstances, [ICE] determines that there is a significant likelihood that the alien may be removed in the reasonably foreseeable future." 8 C.F.R. § 241.13(i)(2); *see also Kong v. United States,* 62 F.4th 608, 619-20 (1st Cir. 2023) (characterizing § 241.13(i)(2) as "requiring (1) an individualized

4

determination (2) by ICE that, (3) based on changed circumstances, (4) removal has become significantly likely in the reasonably foreseeable future."). If ICE elects to revoke a noncitizen's release under 8 C.F.R. § 241.13(i)(2), the noncitizen must "be notified of the reasons for revocation of his or her release," and ICE must "conduct an initial informal interview promptly after [the noncitizen's] return to [ICE] custody to afford the [noncitizen] an opportunity to respond to the reasons for revocation stated in the notification." *Id.* § 241.13(i)(3). But if the Court determines that "removal is not reasonably foreseeable," continued detention is nether reasonable nor authorized by statute. *Phongsavanh v. Williams*, 2025 WL 3124032, at *3 (S.D. Iowa Nov. 7, 2025) (citing *Zadvydas v. Davis*, 533 U.S. 678, 699-700 (2001)).

Here, the Court concludes what it preliminarily found—ICE did not follow its regulations when arresting and detaining Abdi, warranting habeas relief. At the threshold, the Court notes that despite Abdi's initial indication that ICE did not "provide him with an interview," (Filing No. 1 at 21), the evidence now before the Court suggests an interview took place the day he was arrested. (Filing No. 21-2 at 3). But as explained below, that interview was deficient from the start. Abdi remains entitled to relief for several reasons.

*First,* the Federal Respondents have failed to carry their burden of showing that removal is significantly likely in the reasonably foreseeable future. *Roble,* 803 F. Supp. 3d at 772. In fact, the Federal Respondents do not even try to make such a showing. They do not argue that removal to Somalia is likely—nor could they, in light of the order withholding Abdi's removal there. (Filing No. 1-1). Nor does it appear the Federal Respondents seek to remove him elsewhere. In a declaration, ICE Deportation Officer Seth Patrin states that Abdi "is not currently in a third country[2] removal process." (Filing No. 24 at 4). That evidence "falls well short" of demonstrating changed circumstances or a significant likelihood of removal in the reasonably foreseeable future. *Phongsavanh,* 2025 WL 3124032, at *5. In sum, the Federal Respondents "fail[ed] to show that [Abdi's] removal is any more likely today than the day he was released on his Order of Supervision" in 2019. *Roble,* 803 F. Supp. 3d at 774. That is one reason he is entitled to release.

---

[2] In this context, a "third country" means a country other than the country designated for removal in immigration proceedings. *See D.V.D. v. U.S. Dep't of Homeland Sec.*, 778 F. Supp. 3d 355, 367 (D. Mass. 2025).

5

*Second,* Abdi was not given adequate notification of the reasons why ICE revoked his release. His Notice of Revocation of Release simply states that "removal from the U.S. is significantly likely in the reasonably foreseeable future" and that "based on changed circumstances," Abdi "would be brought back into ICE custody." (Filing No. 21-2 at 1). But that is all the Notice says, apart from "parroting the regulatory text governing re-detention." *Roble,* 803 F. Supp. 3d at 771. It does not explain why removal suddenly became significantly likely or what those changed circumstances actually were. The key language in the Notice is not "individualized to [Abdi]; in fact, it applies to any noncitizen detained under 8 C.F.R. § 241.13(i)(2), since the notice simply mirrors the legal standard applicable to detaining a noncitizen released on an Order of Supervision." *Id.* at 771-72. Providing a notice that "simply recites the language of the regulation" does not satisfy the Federal Respondents' obligation to state the "reasons" why Abdi's Order of Supervision was revoked. 8 C.F.R. § 241.13(i)(3).

The Federal Respondents also necessarily failed to afford Abdi an opportunity to respond to the reasons for revocation stated in the notification because there were none. Put differently, Abdi could not have been expected to "respond to the reasons for revocation stated in the notification" in his interview if the notification did not give any reasons for revocation. *Roble,* 803 F. Supp. 3d at 772. Abdi's statements during the interview—as related by the deportation officer—show as much. They do not relate to the revocation of his release at all. They instead seem, as Abdi stated in his second declaration, to have been made in response to the deportation officer asking "what [he] had been doing with [his] life since 2019 when ICE released [him]." (Filing No. 21-3 at 1).

Put simply, ICE's Notice of Revocation of Release did not adequately advise Abdi of the reasons why he was re-detained, nor was he afforded an opportunity to respond to those unstated reasons. That runs afoul of the requirements set forth in 8 C.F.R. § 241.13(i)(3) and is another reason he is entitled to release.

Because ICE did not follow its regulations in revoking Abdi's release, the Court concludes he is entitled to habeas relief on his arrest and detention-related claims. The Court will therefore order that Abdi's interim release becomes final under the conditions imposed by the December 24, 2025 order of supervision. (Filing No. 18 at 3).

6

2. **Third country removal-related claims**

Abdi raises a second set of claims surrounding the Federal Respondents' alleged plan to remove him to a third country without meaningful notice or an opportunity to be heard on a claim of fear or persecution there. (Filing No. 1 at 32-35). He seeks injunctive relief requiring the Federal Respondents, if they seek to carry out a third country removal, to "provide written notice of removal to that [third] country at least ten days prior to the removal" and to provide "notice to Mr. Abdi . . . in a language Mr. Abdi understands." (Filing No. 1 at 35). He also seeks an order directing the Federal Respondents to "provide a reasonable fear interview" if Abdi expresses a fear of removal there," as well as directing the Federal Respondents to "move to reopen" his removal proceedings if he is found to have a reasonable fear of removal and if he is not, "allow[ing] a further fifteen days" for him to file a motion to reopen his immigration proceedings. (Filing No. 1 at 35-36).

The Federal Respondents, as before, make a threshold challenge to the Court's jurisdiction over those claims. Pointing to Deportation Officer Patrin's declaration, they argue those claims are "not ripe because [Abdi] is not undergoing any third country removal process currently." (Filing No. 22 at 9); *see Missourians for Fiscal Accountability v. Klahr*, 830 F.3d 789, 979 (8th Cir. 2016) ("A claim is not ripe for adjudication if it rests upon "contingent future events that may not occur as anticipated, or indeed may not occur at all.") (citation modified). Abdi, of course, sees things differently. He invokes the voluntary cessation doctrine in support of an argument that the Federal Respondents' "unilateral actions after litigation commenced cannot deprive this Court of jurisdiction." (Filing No. 26 at 6).

The Court need not reach those arguments, however, because it cannot grant Abdi the relief he seeks on his third country removal-related claims for a different reason: it falls too far outside the core of relief available on a writ of habeas corpus.

In *Dep't of Homeland Sec. v. Thuraissigiam*, the Supreme Court reaffirmed that at the time the Constitution was adopted, the writ of habeas corpus "simply provided a means of contesting the lawfulness of restraint and securing release." 591 U.S. 103, 117 (2020); *see also, e.g., Preiser v. Rodriguez,* 411 U.S. 475, 484 (1973) ("It is clear . . . from the common-law history of the writ . . . that the essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and that the traditional function of the writ is to secure release from illegal custody").

The court therefore found that the plaintiff's requested relief—vacatur of his removal order and "an order directing [the U.S. Department of Homeland Security] to provide him with a new . . opportunity to apply for asylum and other relief from removal"—might fit an injunction or writ of mandamus, but "f[ell] outside the scope of the common-law habeas writ." *Id.* at 118.

Relying on cases like *Thuraissigiam*, district courts have declined to award injunctive or declaratory relief to habeas petitioners in immigration detention. *See, e.g., Mbutha v. U.S. Immigr. & Customs Enf't*, 2025 WL 3550997, at *3 (S.D. Fla. Dec. 11, 2025) ("[T]he Court would not be able to grant the injunctive and declaratory relief the petitioner seeks because this relief is outside the 'core' of the historical relief afforded by the writ of habeas corpus."); *Fadwa v. Lyons*, 2025 WL 3525026, at *7 (D. Colo. Dec. 9, 2025) (finding that the petitioner's "request that respondents follow 'proper procedures' before removing him to a third country is outside the relief available on a petition for writ of habeas corpus."); *Rios v. Noem*, 2025 WL 3141207, at *4 (S.D. Cal. Nov. 10, 2025) (granting the petitioner's petition for writ of habeas corpus and ordering that the petitioner be released from immigration custody, but declining to enter "three forms of injunctive relief requiring Respondents to comply with the law").

The Court reaches the same conclusion here. Abdi's success on his other claims entitles him to the "typical remedy" for "unlawful executive detention"—release. *Munaf v. Geren*, 553 U.S. 674, 693 (2008). But "the nature of the relief sought by" Abdi on his third country removal-related claims "suggests that habeas is not appropriate[.]" *Id.* The injunctive relief he seeks "falls outside the scope of the common-law habeas writ," so the Court cannot award it. *Thuraissigiam,* 591 U.S. at 118.

In sum, the Court concludes that Abdi is entitled to relief on his arrest and detention-related claims. It will therefore grant his petition for a writ of habeas corpus in part, and his interim release will become final. The Court cannot, however, award the injunctive relief Abdi seeks on his third country removal-related claims, so his petition will also be denied in part. Accordingly,[3]

---

[3] As for Abdi's request for attorney's fees and costs under the Equal Access to Justice Act (Filing No. 1 at 36), he may move separately within thirty days of final judgment in this action to recover them. *See* 28 U.S.C. § 2412(d); 5 U.S.C. § 504.

**IT IS ORDERED:**

1. Petitioner Abdulkadir Sharif Mohamed Abdi's Petition for Writ of Habeas Corpus (Filing No. 1) is granted in part and denied in part, as set forth above.
2. Petitioner shall remain released from custody under the conditions imposed by the Order of Supervision dated December 24, 2025.
3. A separate judgment will be entered.

Dated this 27th day of February, 2026.

BY THE COURT:

Susan M. Bazis
United States District Judge